**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIFFANY P.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-14084 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Tiffany P.'s[1] ("Tiffany" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Tiffany's request for disability insurance benefits. (Administrative Record ("AR") at 1–4.)[2] The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1.

## I. BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law Judge Jennifer Spector (the "ALJ" or "Judge Spector") properly analyze, with the support of substantial evidence, Tiffany's residual functional capacity under the Social Security Act?

### A. PROCEDURAL POSTURE

On September 5, 2022, Tiffany filed an application for a period of disability and disability insurance benefits, alleging an onset date of June 1, 2021. (AR at 45, 47.) Tiffany was 43 years

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

[2] The Administrative Record is available at ECF Nos. 8-1 through 8-16. This Opinion will reference only page numbers in the Administrative Record without the corresponding ECF numbers.

old on the alleged onset date. (*Id.* at 56.) The Social Security Administration (the "Administration" or "SSA") denied the requests both initially and on reconsideration. (*Id.* at 45.) Thereafter, Tiffany requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On May 31, 2024, Tiffany, **legal**~~her~~ counsel, and Ellen Levine, a vocational expert ("VE"), ~~testified at~~ **appeared on** a **telephonic** hearing before Judge Spector. (*Id.*) On July 26, 2024, Judge Spector issued a written decision finding that Tiffany was not disabled. (*Id.* at 45–57.) The Administration's Appeals Council denied Tiffany's request to review Judge Spector's decision. (*Id.* at 1–4.) This appeal followed. (*See* ECF No. 1.) The Administrative Record was filed on November 5, 2025. (AR.) Tiffany then filed her moving brief ("Pl. Br.," ECF No. 15), and the Commissioner filed an opposition ("Opp.," ECF No. 19).

### B. JUDGE SPECTOR'S DECISION

As stated in her July 26, 2024, decision, Judge Spector held that Tiffany was not disabled under the prevailing Administration regulations. (*See generally* AR at 45–57.) To reach this conclusion, Judge Spector analyzed Tiffany's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). At Step One, Judge Spector found that Tiffany had not engaged in substantial gainful activity since June 1, 2021, her alleged onset date. (*Id.* at 47 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).)

At Step Two, Judge Spector found that Tiffany suffers from seven severe impairments: obesity, degenerative disc disease of the lumbar spine, coronary artery disease, diabetes with neuropathy, post-traumatic stress disorder ("PTSD"), major depressive disorder, and anxiety disorder. (*Id.* at 47–48 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) Judge Spector concluded that these severe impairments "significantly limit" Tiffany's ability to perform basic work

activities as required by Social Security Ruling 85-28. (*Id.* at 48.) Judge Spector also found that Tiffany had the "medically determinable impairments" of pulmonary nodules, hypertension, hyperlipidemia, degenerative joint of the knees, hiatal hernia, GERD, obstructive sleep apnea, and vitamin D deficiency but that these were non-severe impairments, as they did not "have more than a minimal effect on [her] ability to perform basic work activities." (*Id.*)

At Step Three, Judge Spector determined that Tiffany does not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 48–50 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) As a precursor to Step Four, Judge Spector concluded, based on a review of the evidence in the record, that Tiffany has the residual functional capacity ("RFC") to perform "light" work, *see* 20 C.F.R. § 404.1567(b), but that any job she performs has to be limited in specified ways:

> [S]he can understand, remember and carry out simple instructions; can make simple work-related decisions based on established standards and instructions; can perform work which does not require a specific production rate; can have occasional interaction with the public and frequent interaction with supervisors and co-workers; and deal with occasional changes in a routine work setting.

(AR at 50.) As part of this determination, Judge Spector incorporated extensive evidence from the record. Judge Spector chronicled nearly three years of medical progress notes beginning from Tiffany's June 2021 alleged onset date. (*Id.* at 51–54.) The ALJ recounted that Tiffany began pain management treatment in August 2021 for back pain, which included physical therapy, an L5-S1 lumbar epidural injection, and Wellbutrin. (*Id.* at 51). **She reported smoking "a half package of cigarettes" (ostensibly daily) for over twenty years and smoking marijuana daily. (*Id.*)** A May 2021 MRI reflected that Tiffany's lumbar spine exhibited minimal spondylosis, and, in August 2021, she was found to have "a limited range of motion in the lumbar spine." (*Id.*) In June 2021, Tiffany visited a neurologist for complaints of memory loss; she reiterated those complaints in a

follow-up visit in October 2021 and was prescribed Ritalin for attention issues. (*Id.*) Tiffany's brain MRI did not reflect any abnormalities, and she did not present any symptoms of multiple sclerosis or seizures. (*Id.*)

In December 2021, Tiffany reported little improvement in her back pain based on the treatment she had received so far and was offered back surgery and "interested in" a spinal cord stimulator. (*Id.* at 52.) In May 2022, Tiffany ultimately declined "any advanced modalities" or "surgical consultation," and instead requested another lumbar epidural injection. (*Id.*) **A physical examination revealed that Tiffany's "gait was stable and strength in all extremities was 5/5." (*Id.*)** An examination and X-rays of Tiffany's lumbar spine in December 2023 and January 2024 "showed multi-level degenerative disc changes," including **only** "mild degenerative changes at the L3-4 level," and reflected "a limited range of motion" despite "normal motor strength and reflexes of the upper and lower extremities." (*Id.*) Tiffany received treatment—physical therapy and a prescribed muscle relaxant—between January and at least May 2024 for lower back and knee pain, even as her doctor identified a disconnect between her reported "high degree of pain" and her "relatively mild" lumbar X-rays and MRIs. (*Id.*)

Tiffany has suffered from trauma—specifically, childhood abuse and adult domestic violence—and several mental health conditions, including post-traumatic stress disorder ("PTSD"), attention deficit hyperactive disorder ("ADHD"), major depressive disorder, and anxiety disorder, for which she received outpatient treatment through Hunterdon Behavioral Health from February 2021 through January 2022. (*Id.* at 53.) During this period, Tiffany's mental state generally reflected average intelligence, normal cognition and judgment, and logical thinking but also indicated an "anxious and depressed mood" and "depressive thought content." (*Id.*) Tiffany was prescribed medication for her mental impairments but refused to participate in

**medically** recommended intensive outpatient or partial hospitalization programs ~~and stopped attending therapy~~. (*Id.*) **Further, Tiffany "was discharged from therapy for non-attendance" and did not attend mental health treatment at Hunterdon Behavior Health for more than two years. (*Id.* at 53–54.)** Psychological testing in March 2022 reflected that Tiffany had deficiencies in memory, and testing in April 2023 revealed deficiencies in memory, concentration, and attention. (*Id.* **at 53.) As of April 2024, Plaintiff was reported to be "smoking marijuana on a daily basis to relieve anxiety." (*Id.* at 54.)**

The ALJ also discussed other evidence regarding Tiffany's day-to-day activities, noting that Tiffany's mother "provided a Third-Party Function Report, which . . . describe[d] a fairly robust array of daily activities, including cooking and doing light household chores" but also indicated that Tiffany has social anxiety. (*Id.* at 55.) **The ALJ noted that Tiffany's "mother reported that she can live independently, manage her personal care, prepare meals, do the laundry, clean, drive, shop in stores, follow instructions well, and handle changes in routine, but she does not handle stress well." (*Id.* at 49.) In making the RFC determination, the ALJ *inter alia* noted that Tiffany's "symptoms were managed with medication and therapy," "that she had normal motor strength and reflexes of the upper and lower extremities," and that she "declined to go through with any advanced modalities, [spinal cord surgery] or surgical consultation in May 2022." (*Id.* at 55.)** Based on her assessment of the record and RFC determination, Judge Spector concluded at Step Four that Tiffany is not capable of performing her past relevant work as a home health aide. (*Id.* at 56.) At Step Five, Judge Spector, relying on the VE's testimony, concluded that Tiffany could perform other jobs that existed in significant numbers in the national economy (and that were consistent with her RFC), including "Marker," "Router," and "Housekeeper." (*Id.* at 56–57 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969,

416.969a).) Thus, because she could perform such work, Judge Spector concluded that Tiffany was not under a disability from June 1, 2021, through the date of the decision. (*Id.* at 57 (citing 20 C.F.R. § 404.1520(g)).)

This appeal principally concerns Judge Spector's evaluation of Tiffany's RFC at the precursor to Step Four. More specifically, Tiffany challenges Judge Spector's determination of Tiffany's RFC (1) "based on her lay interpretation of the evidence" while discounting "the treating source opinion from Plaintiff's primary care provider" and (2) the extent of Tiffany's mental limitations, which "was not based on substantial evidence." Tiffany also contends that the Appeals Council erred in not considering new evidence from her physician, Dr. Troy Wood M.D., which was submitted after the ALJ issued her decision. (*See* Pl. Br. at 1, 18–40.) Thus, because "all other issues have been" forfeited, the Court restricts its review to these issues. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

**1. Tiffany's Subjective Testimony**

Judge Spector's RFC determination at the precursor to Step Four came after her "careful consideration of the entire record," including the objective medical evidence, opinions, and Prior Administrative Medical Findings ("PAMFs") therein. (AR at 50.) As is relevant to this appeal, Judge Spector began her analysis by reviewing Tiffany's hearing testimony. (*Id.* at 50–51.) Tiffany testified that she lives alone and that, **while she is able to drive,** she ~~had~~ **recently** avoided driving for the past few months due to anxiety, which arises "if people try to cut her off." (*Id.*) She stated that she struggles to be around groups of people and that she does not go outside her house unless necessary. (*Id.* at 50.) Tiffany further testified that she is a survivor of childhood sexual abuse and domestic violence as an adult and that she suffers from panic attacks when she goes outside. (*Id.*) Tiffany stated that she takes medication for middle and lower back pain and has had four injections

for her back pain, none of which have provided relief. (*Id.* at 51.) Tiffany testified that her memory was impaired due to her involvement in three car accidents in 1996, 2021, and 2023. (*Id.*)

Tiffany stated that she takes care of her three-year-old granddaughter one to two days a week and can briefly pick up her granddaughter who weighs approximately 25 to 30 pounds. (*Id.*) Tiffany testified that she could pick up half a gallon of milk but that doing so causes pain. (*Id.*) Tiffany testified that she suffers from knee, leg, and back pain, which limit her ability to drive, sit, and get up and down stairs. (*Id.*) Based on this testimony, Judge Spector determined that Tiffany's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) However, she found Tiffany's "statements concerning the intensity, persistence and limiting effects" of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Judge Spector did not specifically identify which elements of Tiffany's testimony she identified as being inconsistent with the other evidence in the record. However, Judge Spector acknowledged Tiffany's history of abuse, nightmares, and flashbacks while observing that "her mental health symptoms were managed with therapy, and [that] her mental status examinations reflected orientation to person, place and time, logical thought process, normal cognition, average intelligence and normal insight and judgment, although she had a depressed and anxious mood, and flat affect." (*Id.* at 56 (citing *id.* at 419–526, 819–1006, 1313–1400).) Judge Spector also noted that Tiffany's physical "symptoms were managed with medication, physical therapy, and injections," which appears to indicate Judge Spector's disagreement with Tiffany's statement that she did not obtain any relief from the four lumbar injections she received. (*Id.* at 55.)

**2. PAMFs and Medical Opinions in the Record**

Judge Spector next evaluated the persuasiveness of the medical opinions and PAMFs in

the record.[3] As is relevant to this appeal, Judge Spector assessed the opinions of Tiffany's treating medical practitioner, Mitzi Pfendt, FNP-C ("NP Pfendt"), as well as state agency psychologists Jocelyn Fierstein and Steven Reed. NP Pfendt found that Tiffany was able to sit for 15 minutes at a time and walk for 30 minutes at a time. (*Id.* at 54.) NP Pfendt further concluded that Tiffany could use her hands for one hour and that "she is unable to stand, bend, squat, climb, or lift." (*Id.*) NP Fendt further found that Tiffany had difficulty pushing and pulling and with socializing and driving; however, her vision and hearing were normal. (*Id.*) The ALJ determined that "Nurse Pfendt's opinion is generally poorly supported." (*Id.*) Specifically, the ALJ noted that, though Nurse Pfendt referenced other medical providers in her opinion, "it is not clear that she reviewed or considered their treatment records" because she did not cite any specific findings that those providers made. (*Id.*)

Further, the ALJ found that NP Pfendt's opinion regarding Tiffany's ability to sit and walk was "inconsistent with the overall record, which reflects that her symptoms were generally well-managed with medication, physical therapy and injections." (*Id.*) The ALJ further characterized NP Pfendt's opinion that Tiffany could not stand, bend, squat, climb, or lift as "ambiguous" and stated that the record—including Tiffany's own testimony—contradicted any finding that she was completely incapable of performing these tasks. (*Id.*) The ALJ explained that it was unclear how NP Pfendt formed the view that Tiffany "has difficulty with socializing" but still considered this finding while limiting Tiffany's interactions with others in the RFC. (*Id.*) As a whole, the ALJ found NP Pfendt's opinion unpersuasive. (*Id.*)

Judge Spector also evaluated Dr. Fierstein's psychological assessment of Tiffany. Dr.

[3] Tiffany does not challenge Judge Spector's assessments of (1) Dr. Arden Fusman or (2) the third-party function report of Tiffany's mother. (Pl. Br. at 1, 18–40.) Accordingly, Tiffany has forfeited her challenge to Judge Spector's assessment of those opinions. *See Torres*, 2023 WL 6890851, at *2 n.3 (collecting cases).

Fierstein "opined that [Tiffany] has mild difficulty with understanding, remembering, or applying information, interacting with others, and adapting or managing oneself, and moderate difficulty with concentrating, persisting, and maintaining pace." (*Id.*) Dr. Fierstein further found that Tiffany

> has moderate difficulty with understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and setting realistic goals or make plans independent of others.

(*Id.* at 54–55 (citing *id.* at 142–49, 151–58).) Dr. Reed—the state agency psychologist at the state reconsideration level[4]—affirmed Dr. Fierstein's opinion. (*Id.* at 55 (citing *id.* at 159–67, 169–77).) The ALJ found Dr. Fierstein and Dr. Reed's opinions "partially persuasive." (*Id.*) The ALJ appears to have premised her credibility determination upon her agreement with the limitations that Dr. Fierstein and Dr. Reed proposed, coupled with her finding that "[e]vidence at the hearing level reflects that the claimant has additional limitations." (*Id.*) Put differently, the ALJ evidently found these PAMFs only partially persuasive because she believed that they did not adequately capture all of Tiffany's mental limitations.[5]

[4] "State agencies acting on behalf of the SSA make the initial evaluations of social security claims." *Rosetti v. Shalala*, 12 F.3d 1216, 1219 (3d Cir. 1993) (citing 42 U.S.C. §§ 421(a), 1383b(a)).

[5] Of note, the ALJ observed in her discussion of Dr. Fierstein's opinion that, in prior mental status examinations, Tiffany's "symptoms were not described as more than moderate" even though she "refus[ed] to attend partial hospitalization programs as recommended by her healthcare providers." (AR at 55.) Importantly, the ALJ's observations do not contradict—but instead mirror—Dr. Fierstein's findings. Dr. Fierstein found that Tiffany had mild or moderate limitations in various aspects of mental functioning **and that her "mental health symptoms were managed with medication and therapy."** (*I*~~*See id.*~~ at 54–55.) ~~Further, though the ALJ noted that Tiffany's "mental health symptoms were managed with medication and therapy," it is unclear if the ALJ viewed this as discounting Dr. Fierstein's opinion. (*Id.* at 55.) In any event, the fact that Tiffany's symptoms were managed does not necessarily undermine Dr. Fierstein's findings. *See Haut v. Colvin*, No. 15-511, 2016 WL 3962020, at *9 (W.D. Pa. July 19, 2016) (observing that "where there is impairment in mental health functions, stability with medication does not necessarily mean that a~~

Based on her analysis of the medical opinions and testimony in the record, Judge Spector concluded that Tiffany had the residual functional capacity to perform "light" work, subject to additional limitations. (*Id.* at 50.) The portions of the ALJ's RFC determination (quoted in full above) most relevant to this appeal are Judge Spector's conclusion that Tiffany could perform light work, and her limitation that Tiffany "can have occasional interaction with the public and frequent interaction with supervisors and co-workers." (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual

---

~~claimant with mental impairments is able to work" (citing *Weinberg v. Colvin*, 2013 WL 3972651, at *5 (W.D. Pa. July 31, 2013))); *see also Antone D. v. Berryhill*, No. 18-5520, 2019 WL 290596, at *5 (W.D. Wash. Jan. 23, 2019) ("The fact medications provide some relief from Plaintiff's mental health symptoms is not inconsistent with [psychologist's] opinion that Plaintiff has continuing limitations.").~~

determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f)). The claimant bears the burden at the first four steps, at which

point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. DISCUSSION

To support her request for remand under 42 U.S.C. § 405(g), Tiffany argues that Judge Spector's RFC determination as to her mental limitations was not supported by substantial evidence in the record. (Pl. Br. at 32–40.) Tiffany alleges that, while the ALJ incorporated some of the mental limitations indicated by Dr. Fierstein into the RFC, she omitted other limitations without explanation. (*Id.* at 34.) Tiffany also contends that Judge Spector's conclusion "that Plaintiff can occasionally interact with the public but can frequently interact with coworkers and supervisors" is "without explanation or support in the record." (*Id.* at 32.)

### A. MENTAL LIMITATIONS DISCUSSED BY DR. FIERSTEIN

The Court remands this matter to the ALJ because it is ~~unable to determine~~ **unclear** why the ALJ did not incorporate all of the mental limitations that Dr. Fierstein found and that Dr. Reed concurred with. The ALJ included the following mental limitations in the RFC: that Tiffany

> can understand, remember, and carry out simple instructions; can make simple work-related decisions based on established standards and instructions; can perform work which does not require a specific production rate; can have occasional interaction with the public and frequent interaction with supervisors and co-workers' and [can] deal with occasional changes in a routine work setting.

( AR at 50.) However, Dr. Fierstein provided several additional limitations that the ALJ did not mention in the RFC. Specifically, the RFC omitted the following limitations provided by Dr. Fierstein: that Tiffany had moderate difficulty "with concentrating [and] persisting," "maintaining attention and concentration for extended periods," "making simple work-related decisions," "completing a normal workday and workweek without interruptions from psychologically based symptoms," "getting along with coworkers or peers without distracting them or exhibiting

behavioral extremes," and "setting realistic goals or mak[ing] plans independently of others." (*Id.* at 54–55.)

In framing the RFC, Judge Spector parted ways with Dr. Fierstein's views in several instances, though it is sometimes unclear from the record why she did so.[6] For instance, as discussed *infra,* Judge Spector concluded—**for reasons that are unclear from the record**~~seemingly without any explanation~~—that Tiffany could interact frequently with supervisors and coworkers despite Dr. Fierstein's opinion that she had moderate difficulty with getting along with coworkers and peers without distracting them or exhibiting behavioral extremes. It was certainly Judge Spector's prerogative to disagree with all or part of Dr. Fierstein's opinion while framing the RFC. Indeed, the RFC determination is the sole province of the ALJ, and that role cannot be assumed by any of the medical practitioners who evaluate a claimant. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.").

Yet an ALJ's discretion in determining the RFC is not unfettered, for her opinion must include "a clear and satisfactory explication of the basis on which it rests" to enable judicial review. *Cotter*, 642 F.2d at 704–05. "[T]he reviewing court cannot tell if significant probative evidence was not credited or simply ignored" when the ALJ does not provide the required explanation. *Id.*

[6] In some instances, the Court can hypothesize why the ALJ did not concur with Dr. Fierstein's findings. For example, Dr. Fierstein opined that Tiffany was moderately limited in making "simple work-related decisions," (AR at 55); however, the ALJ did not include this limitation in the RFC. The ALJ may have, *inter alia*, relied on the Third-Party Function Report from Tiffany's mother, which explained that she engaged in "a fairly robust array of daily activities, including cooking and doing light household chores," to conclude that Tiffany was capable of simple decision-making. (*Id.*) **The ALJ further cited the Third-Party Function Report and Tiffany's treatment notes to observe that she "is able to live independently, manage her personal care, prepare meals, do the laundry, clean, drive, shop in stores, and follow instructions well." (*Id.* at 49.)**

at 705. Though the ALJ may certainly elect to accept or reject a particular medical opinion, her determinations must be supported by proper reasons. *See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 927–28 (3d Cir. 2019) (citing *Morales*, 225 F.3d at 317); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("[A]lthough the government may properly accept some parts of the medical evidence and reject other parts, the government must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition" (internal quotation marks omitted)).

In evaluating Dr. Fierstein's opinion, Judge Spector was also obligated to consider and explain the supportability and consistency factors set forth in 20 C.F.R. § 404.1520c. While "[s]upportability is the extent to which a medical opinion uses relevant objective medical evidence and supporting explanations. Consistency looks to how the medical opinion accords with the other medical and nonmedical sources on record." *Lynch v. Comm'r Soc. Sec.*, No. 23-1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024) (internal quotation marks omitted). An ALJ "need not reiterate the magic words 'support' and 'consistent'" for each medical opinion she reviews but may instead "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

~~Judge Spector failed to articulate—either explicitly or implicitly—whether she found that~~ **Judge Spector's analysis of** Dr. Fierstein's opinion **inadequately discusses the supportability and consistency factors.**~~was supported by and consistent with the record~~. The ALJ began her analysis by summarizing Dr. Fierstein's psychological assessment of Tiffany's limitations. The ALJ then opined that "[e]vidence at the hearing level reflects that the claimant has additional limitations" and proceeded to briefly mention details of Tiffany's mental health history that

ostensibly supported these limitations. (AR at 55.)[7] **The ALJ did not state that she disagreed with any of the mental limitations that Dr. Fierstein proposed.**

Judge Spector concluded her analysis by finding that Dr. Fierstein's opinion was partially persuasive. ~~The ALJ failed to properly articulate whether Dr. Fierstein's opinion was supported by other evidence in the record. Though the ALJ mentioned other evidence in the record, the Court cannot determine how this evidence relates the ALJ's assessment of Dr. Fierstein's opinion.~~**However, there is a disconnect between the ALJ's analysis and her decision to credit only some, but not all, of the limitations that Dr. Fierstein proposed. Notably, the ALJ's analysis did not incorporate other record evidence—which she previously mentioned in her opinion—which may have *undermined* Dr. Fierstein's findings. For instance, Tiffany declined to attend a medically recommended "partial hospitalization or intensive outpatient program" for her mental impairments and was "discharged from therapy for non-attendance." (*Id.* at 53.) There was also a lapse of over two years in Tiffany's mental health treatment at Hunterdon Behavioral Health. (*Id.* at 54.) *See Fleming v. Sullivan*, No. 88-8763, 1991 WL 41132, at *5 n.5 (E.D. Pa. Mar. 21, 1991) ("The failure to follow a medically prescribed regimen may be considered in determining a claimant's right to disability payments.") (citing *Welch v. Heckler*, 808 F.2d 264, 270 (3rd Cir.1986))).** ~~To be clear~~**It is also**

[7] It is unclear how the evidence from Tiffany's mental health history that the ALJ cited here relates to the additional limitations that she opined that Dr. Fierstein should have found. For example, the ALJ noted that Tiffany's "mental status examinations reflected orientation to person, place, and time, logical thought process, normal cognition, average intelligence and normal insight and judgment" and that "her symptoms were not described as more than moderate." (AR at 55.) Puzzlingly, this evidence would suggest that Tiffany's mental RFC should—contrary to the ALJ's findings—contain *fewer* limitations than those that Dr. Fierstein indicated. Adding to the confusion, the ALJ did not specify the additional limitations which she believed Dr. Fierstein omitted in her analysis. Upon reviewing the mental RFC, the Court cannot identify any additional limitations that the ALJ incorporated beyond those Dr. Fierstein proposed. **To be clear, the ALJ could have omitted—and, on remand, may certainly omit—some or even all of Dr. Fierstein's proposed limitations if the rationale for such omissions is clear.**

**unclear why the ALJ discredited several of Dr. Fierstein's proposed limitations because** the ALJ's **analysis does not appear to contradict any of Dr. Fierstein's -findings. Specifically, the ALJ's** observation that Tiffany's "symptoms were not described as more than moderate" in prior mental assessments (*id.* at 55) comports with Dr. Fierstein's findings, and her remark that Tiffany's symptoms improved with therapy and medication certainly does not preclude Dr. Fierstein's conclusion that Tiffany was moderately limited in several areas of mental functioning. *See supra* notes 5 and 7.

As for consistency, the ALJ noted only that Dr. Reed affirmed Dr. Fierstein's opinion on reconsideration. (*Id.*) Yet this finding lends credibility to Dr. Fierstein's opinion, and it provides no insight into why—as is relevant here—the ALJ omitted several of Dr. Fierstein's proposed limitations. This was erroneous. *Joseph B. v. Bisignano*, No. 25-2180, 2025 WL 3266122, at *5 (E.D. Pa. Nov. 21, 2025) ("[T]he ALJ's failure to consider supportability and incomplete application of the consistency factor renders her decision legally flawed.").[8] Judge Spector's **lack of clarity as to** ~~failure to adequately analyze~~ the supportability and consistency of Dr. Fierstein's opinion constituted harmful error because she ~~inexplicably~~ excluded several of the mental limitations that Dr. Fierstein proposed from the RFC. ~~In fact, the ALJ did not even *implicitly* indicate that she disagreed with many of Dr. Fierstein's limitations.~~ *See Annette S. v. Kijakazi*, No. 21-2153, 2022 WL 2980982, at *8 (D.N.J. July 28, 2022) (holding that "the ALJ's failure to include in Plaintiff's RFC—or to explain the omission from Plaintiff's RFC—limitations relating

[8] In contrast to her analysis of Dr. Fierstein's opinion, Judge Spector appears to have incorporated supportability and consistency into her discussion of NP Pfendt's opinion. As to supportability, Judge Spector noted, for instance, that it was "unclear what the basis" was for NP Pfendt's opinion that Tiffany struggled with socializing. (AR at 54.) Judge Spector also observed that NP Pfendt's suggestion that Tiffany was entirely unable to stand, bend, squat, climb, or lift "would be both unsupported and inconsistent with the overall record," indicating that she considered both factors in her analysis (*Id.*) The ALJ did not include a similar analysis of these factors in her discussion of Dr. Fierstein's opinion.

to moderate limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods—cannot be viewed as harmless" and necessitated remand (citing *H.G. v. Comm'r of Soc. Sec.*, No. 20-7560, 2021 WL 3706724, at *2–3 (D.N.J. Aug. 20, 2021))). The VE's testimony at Step Five regarding the types of jobs—sufficiently available in the national economy—that Tiffany could perform may have been materially different if one or more of the omitted mental limitations were included in the RFC. *See Moeller v. Kijakazi,* No. 20-571, 2021 WL 3207247, at *8 (M.D. Pa. July 29, 2021) (finding that ALJ's inexplicable failure to include limitation indicated in opinion evidence in RFC was harmful because "it could have made a difference" in Step Five analysis). Accordingly, the Court must remand **because it is unclear why the ALJ chose to include some of Dr. Fierstein's limitations in the RFC and not others.**~~on this basis.~~

## B. Interactions with the Public, Supervisors, and Coworkers

The Court next considers Tiffany's argument that Judge Spector inexplicably distinguished between Tiffany's levels of social interaction with various social groups—namely, coworkers, supervisors, and the public—in the RFC. (*See* Pl. Br. at 32–34.) "The public, supervisors, and co-workers are distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms. Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third." *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014); *see also Grinolds v. Colvin,* No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015) (observing that "limitations on one type of interaction in the RFC does not account for limitations on the others" because "[t]he public, supervisors, and co-workers are distinct groups.") Here, the ALJ determined—without any explanation—that Tiffany could frequently interact with coworkers and supervisors but could only occasionally interact with the public. "If the ALJ

distinguishes between groups for purposes of social interaction, she must explain and provide support for the distinction." *Lori O. S. v. O'Malley*, No. 23-3859, 2024 WL 3522190, at *7 (E.D. Pa. July 24, 2024) (citing *Lionel James G.L. v. Comm'r of Soc. Sec.*, No. 23-3204, 2024 WL 213387, at *8 (W.D.N.Y. Mar. 21, 2024)). The Court is unable to identify any rationale in the ALJ's opinion that would even implicitly support her inconsistent findings regarding social interaction. **Indeed, "any evidence supporting limitations in an ability to interact with others would seem to call for greater restrictions in a claimant's ability to interact with supervisors than with any other persons" *Id.* (cleaned up).**

too harsh

At Step Three, the ALJ found that Tiffany had a "moderate limitation" in interacting with others. (AR at 49.) In making this finding, the ALJ considered the history of abuse that Tiffany endured and her difficulty with participating in group therapy. (*Id.* (citing *id.* at 419–526, 819–1006).) However, the ALJ also considered Tiffany's own testimony **indicating a meaningful ability to interact with others—specifically,** "that she has no problems getting along with family, friends, neighbors, and others" and that "she has never been fired or laid-off from a job because of problems getting along with other people." (*Id.* (citing *id.* at 352–63).) The ALJ also noted Dr. Fierstein's opinion that Tiffany "has mild difficulty with . . . interacting with others" and "moderate difficulty with . . . working in coordination with or in proximity to others without being distracted by them." (*Id.* at 54–55.) The ALJ believed that Dr. Fierstein's findings regarding Tiffany's mental limitations were, in fact, too limited in scope. (*Id.* at 55.)

~~It is unclear why the ALJ, after determining that Tiffany was moderately limited in interacting with others, (*id.* at 49), drew a seemingly arbitrary distinction between her levels of interaction with the public, coworkers, supervisors and determined that she could frequently interact with supervisors and coworkers while only occasionally interacting with the general~~

~~public,[9] *see Lori O. S.*, 2024 WL 3522190, at *7 (observing that "any evidence supporting limitations in an ability to interact with others would seem to call for greater restrictions in a claimant's ability to interact with supervisors than with any other persons" (cleaned up)); *see also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *2 (W.D. Pa. Nov. 12, 2015) (noting that "it is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned" in opinions that the ALJ ostensibly accepted).~~

However, Tiffany does not show, as she must, why Judge Spector's failure to adequately explain the differing levels of social interaction in the RFC was harmful. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (explaining that, to establish harmful error, a claimant must "explain how the error to which he [or she] points could have made any difference" in the ALJ's ultimate disability finding (cleaned up) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009))); *see also Taylor v. Comm'r of Soc. Sec.*, 826 F. App'x 224, 226 (3d Cir. 2020) (holding that district court properly affirmed the ALJ's disability determination because claimant, *inter alia*, did not explain "what effect [the ALJ's purported error] would have had on the proceedings" (citing *Shinseki*, 556 US at 409)). Of course, the Court may remand this matter to the Commissioner for further proceedings "only if the ALJ's error was not harmless." *Gonzalez v. Saul*, No. 17-2524, 2019 WL 13401378, at *16 (D.N.J. Oct. 31, 2019). In this case, Tiffany contends only that "the ALJ did not explain . . . different levels of interaction [in the RFC], which

~~[9] The Court is mindful that the ALJ's determinations at Step Three and Step Four "serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019); *see also id.* at 201 n.2 (noting that "[t]here is some ambiguity in the case law as to whether RFC is assessed at step four or at the end of step three," but "treat[ing] the RFC assessment as part of step four"). Though the ALJ's findings at Step Three "do not dictate the terms of the ALJ's statement of the claimant's limitation in the" RFC, "those findings are relevant to that statement of the limitation, which must be sufficient to reflect all of a claimant's impairments." *Id.* at 210. In this case, it is unclear how the ALJ's Step Three finding that Tiffany was moderately limited in interacting with others squares with her RFC determination at Step Four that she could frequently interact with supervisors and coworkers.~~

is improper" and that "[t]herefore, remand is required." (Pl. Br. at 34.) Tiffany's sparse explanation is insufficient to demonstrate harmful error; thus, the Court refrains from analyzing the ALJ's omission for harmful error and does not remand on this ground. However, for the sake of completeness, the Court observes that the ALJ's unexplained distinction between social categories at Step Four may have affected her analysis at Step Five—specifically, the VE's testimony regarding the jobs that Tiffany's RFC allowed her to perform and, by extension, the ALJ's disability finding. *See Benjamin v. Comm'r of Soc. Sec.*, No. 08-4035, 2009 WL 1323576, at *4 (D.N.J. May 12, 2009) (finding that ALJ's error at Step Four necessitated fresh Step Five analysis on remand (citing *Williams v. Apfel*, 98 F. Supp. 2d 625, 632 (E.D. Pa. 2000))); *see also Rolon-Torres v. Kijakazi,* No. 22-223, 2023 WL 2244684, at *8 (E.D. Pa. Feb. 27, 2023) (finding that ALJ's error at Step Four rendered hypothetical presented to VE at Step Five deficient such that VE's testimony was not substantial evidence to support disability finding).

Here, the ALJ specifically included in her hypothetical to the VE that the individual "can occasionally interact with the public and frequently with supervisors and coworkers," and the VE's testimony regarding the jobs that Tiffany could perform appears to have, *inter alia*, been based on this parameter. (AR at 137.) In short, the record suggests that Tiffany's level of interaction with supervisors and coworkers factored into the ALJ's final determination that Tiffany was not disabled. In similar cases, courts have found that remand was warranted. *See, e.g., Lori O. S.,* 2024 WL 3522190, at *10 (finding that "ALJ's failure to explain" omission of social interaction limitation from RFC determination and hypothetical posed to VE constituted harmful error); *Michael P. v. Kijakazi*, No. 21-1134, 2023 WL 3001415, at *9 (D.N.J. Apr. 19, 2023) ("The ALJ's failure to include a limitation relating to the ability to interact with co-workers, and failure to explain that omission, cannot be viewed as harmless"); *Donna W. v. Kijakazi*, No. 21-11285, 2023

WL 869097, at *9 (D.N.J. Jan. 27, 2023) (remanding because the Court could not "glean from the totality of the ALJ's decision why the ALJ determined that Plaintiff was capable of frequent interaction with supervisors and coworkers, particularly when the ALJ found a moderate limitation in interacting with others" (cleaned up)). As explained above, Tiffany's argument that the ALJ failed to adequately explain differing levels of social interaction is insufficient for the Court to remand this case to the Commissioner. However, the Court is remanding this matter for other reasons, as explained *supra,* Section III.A. Accordingly, the Court ~~expects~~ **requests** that, on remand, the ALJ ~~will~~ cogently explain any distinctions between Tiffany's levels of interaction with coworkers, supervisors, and the public included in the RFC. The Court intends its remarks above to serve as guidance for the ALJ ~~on this aspect.~~, **but in no way shall they be interpreted as this Court's view as to any findings or conclusions.**

For the foregoing reasons, the Court remands this matter to the Commissioner for further proceedings.[10] **Again,** ~~T~~the Court expresses no opinion as to whether Tiffany is disabled under the relevant regulations. The Court also does not opine as to which, if any, of Dr. Fierstein's proposed mental limitations—which the ALJ omitted in the first instance—should be incorporated into the RFC. On remand, however, the ALJ should explain her RFC determination as to Tiffany's level of interaction with coworkers and supervisors if it remains different from her level of interaction with the general public. Further, the ALJ should adequately explain her findings as to the supportability and consistency of Dr. Fierstein's opinion. If, on remand, the ALJ chooses to omit

[10] Because the Court is remanding this case to the Commissioner for the reasons set forth in this Opinion, it does not reach Tiffany's arguments regarding the ALJ's analysis of NP Pfendt's medical opinion and the Appeals Council's decision not to consider ~~new~~ **Dr. Wood's medical opinion** evidence **submitted** after the ALJ's ruling. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003). The Court clarifies that ~~the new evidence that Tiffany submitted to the Appeals Council~~**Dr. Wood's medical opinion** "may be considered by the ALJ in the first instance on remand." *Danissa P. v. Comm'r of Soc. Sec.*, No. 19-1993, 2020 WL 3264134, at *8 (W.D. Wash. June 17, 2020).

certain mental limitations contained in the medical opinions or PAMFs from the RFC, she should indicate her reasons for doing so in order to permit meaningful review. *See Cotter*, 642 F.2d at 704–05.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **VACATED**, and this case is **REMANDED** for further proceedings. An appropriate Order follows.

______________________________
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: August __, 2026